Good morning. Illinois Appellate Court First District Court is now in session. The Second Division. The Honorable Justice Nathaniel House presiding. Case number 22-0769. People v. Arroyo. Good morning. My name is Nathaniel House. I'm a judge of the Illinois Appellate Court and presiding over this case with me are Justices David Ellis and Cynthia Cobb. We're doing this hearing via Zoom due to the COVID crisis. We will proceed as follows today. Each side will be given approximately 10 minutes to present an argument uninterrupted, after which the parties, the attorneys, I mean the judges will ask questions. After both sides have their presentation, the appellant will be given a few minutes for a issue we think you need to address. Do you have any questions about how we're going to proceed today? Who's representing the appellant? My name is Sarah Curry from the State Appellate Defender and I represent Jorge Arroyo. Okay. Do you have any questions? No. And for the state? Rita Stotts from the State's Attorney's Office for the People. All right. Any questions, Ms. Stotts? No. Okay. All right. With that, we can proceed. When you're ready, Ms. Curry. Good morning, Your Honors. Today I'm going to focus my comments on the sufficiency of the evidence and the coercive nature of the deliberations. Jorge Arroyo was found guilty of one count of misdemeanor domestic battery following a jury trial. However, there can be no trust in the outcome of his trial. The state's evidence was far from overwhelming and the trial judge's actions during jury deliberations created such a coercive environment that Jorge was denied his right to a fair trial. On the morning of February 26, 2021, Jorge's wife, Christy, became frustrated with him because he did not want to engage in a conversation with her. In response, Christy took Jorge's key ring, which contained his house, car, and work keys, and went into their children's bedroom closet hiding the keys under her shirt. Christy knew that Jorge wanted his keys back and she was determined to do whatever she could to prevent that from happening. Christy testified that Jorge grabbed for the keys and she tripped and fell in the closet. According to Christy, Jorge put his elbow on her neck and attempted to get the keys from under her shirt. A short struggle ensued until Jorge was able to recover the keys. Christy admitted that she grabbed Jorge, that she scratched him, and that she dug her nails into his skin. As soon as Jorge recovered his keys, he left the room. Jorge testified that he did not hit or swat Christy. He asked Christy for the keys several times, but she refused. Jorge testified that Christy scratched him and dug her nails into him, and at that point, he used a little force to get the keys back. Christy's testimony is insufficient to sustain Jorge's conviction. She originally told police that Jorge struck her on the right shoulder, but at trial changed her story to one where Jorge placed his elbow on her neck. While the state offered grainy photos of marks on Christy's leg or neck, none of the responding officers testified at trial to corroborate that these marks appeared on her following the incident. Christy was the aggressor. She took Jorge's keys and was determined to prevent him from getting them back. Jorge, who needed his keys to get to work, used the little force necessary to retrieve them. This was a common argument, not a domestic battery. As such, Jorge's convictions should be reversed outright. Jorge's trial took place on June 28, 21, only a few weeks after trials had resumed following the suspension due to the COVID-19 pandemic. 32 potential jurors were bused from 26 in California to 55 West Harrison at 9 a.m. that morning. The trial judge told the parties that the trial would begin and end that day. Jury selection lasted from 11.30 in the morning until 3.13 in the afternoon. The jury was not given a break for food until 6.47 p.m. after Christy's testimony. The jury began its deliberations around 8.30 and around 9 o'clock, the jury returned a verdict. However, when the jury was polled, juror Luis Navidad responded that she had signed the because by the lack of everything I hear, I don't feel like my conscience would allow me to send somebody to jail. And then she was cut off. The judge's initial reaction was that the jury could not continue to deliberate. But after making a phone call, she told the jury that because of Navidad, their verdict was not unanimous and that they must continue to deliberate until they reached a unanimous verdict. It was 9.50 p.m. Before the jury began to redeliberate, it sent out three notes. The first note stated, can I be dismissed from the jurors so the 10 of them can deliberate? The court responded, you must continue to deliberate. The second note stated, if I'm unable to make a fair choice, what am I expected to do? The court responded, continue to deliberate. The third note stated, what if we think the evidence is lacking in this case? The court responded, you have heard the instructions, follow the instructions you have been given. Around 10.30 p.m., the jury returned a guilty verdict. These circumstances created a clear and obvious risk of juror coercion. A criminal defendant being tried by a jury is entitled to the uncoerced verdict of that body. Impermissible coercion occurs when the juror surrenders their honest opinions for the mere purpose of returning a verdict. After the poll, all the jurors knew that Navidad was the one lone holdout, placing significant pressure on her to leave. Navidad had told the deputy that she did not even want to be present for the reading of the verdict, highlighting the tension that she already felt. The judge's directions after the poll and her responses to the notes gave no indication that the jury would be able to leave until they reached a unanimous verdict, intensifying the pressure on Navidad. As defense counsel argued, the jury did not know if they were going to be forced to remain there until infinity. The jurors were never told not to surrender their honest beliefs just to reach a unanimous verdict. It was late. It had been a long day with little food. Navidad, no doubt, understood that she was the person preventing the rest of the jurors to go home for the day. The judge was intent on finishing the trial in one day when she should have excused the jury for the night. Giving the jury a break until the following morning would have significantly reduced the coercive environment. But the judge did not do that, and the jury returned its second verdict quickly after being told to continue to deliberate until they reached a unanimous verdict. This sudden change of heart signals that Navidad was coerced. There can be no confidence in the fairness of Jorge's trial. This case must go back so that Jorge can be tried before a jury free of pressure and coercion. Thank you. Do you have any questions? Justice Collins. I'm sorry, Ms. Curry, your sufficiency argument really just asked us to reweigh credibility, doesn't it? Well, it doesn't, and this jury, this court can certainly look at the testimony and certainly one, the testimony of one witness is sufficient, but that witness's testimony must be positive and credible. And Christie's testimony simply was not credible here. She was the aggressor. She was determined to keep the keys from Jorge. She did everything she could in her power to keep those keys, and he needed to get those keys to get to work. And her changing of her story and her just being the person, the aggressor in this case, really diminishes her credibility. And certainly this court can take that into consideration. If we find that with respect to your second argument that the jury appeared to be pressured or coerced into reaching a final determination and we send this case back, what then are we seeking in terms of an outcome? Well, Mr. Arroyo would have the right to a new trial before a judge that was not coerced. And certainly in this case where the evidence is very close and clearly the jury was struggling with the closeness of the evidence, he is entitled to a fair trial before a jury that is not feeling pressure or coercion. I have nothing else. There was an offer, a plea offer given to the defendant here. What's there? I can't recall off the top of my head about the plea offer, but Mr. Arroyo stood by his plea of not guilty and wanted to pursue this at trial and the evidence, the closeness, and lack of sufficiency in the evidence shows why he did that. All right. I don't have any questions. Justice Ellis, anything? Maybe just one. Good morning, Ms. Curry. Can you hear me okay? Yes. Okay. I'm sorry to everyone. I don't have a courtroom background or had to borrow a computer today. So what is our standard of review with regard to the, not the sufficiency question, but the question of jury deliberations and the judge's actions? Do we have a standard of review here? Well, the trial court's determination and how to conduct jury deliberations is looked at for an abuse of discretion. I mean, you talked about the risk of juror coercion. And I think that is the standard in the law, not the standard, but that is the rule of law, right? We don't have to absolutely find coercion. We have to find a risk, but is there some standard here? Do we just look anew at the record and come up with our own determination? Well, we look at the totality of the circumstances and the way that the juror, it's an objective standard based on the way that the juror would have felt. And certainly we have a lot here in the record that shows that this juror felt extreme pressure. She did not even want to sit in the room, in the jury room or in the courtroom when the verdict was being read. She felt such pressure. And at that point, you know, we also don't know who wrote these jurors. The court never inquired as to who specifically wrote the jurors. I think if you take a close look at the notes, the handwriting on all of them does not appear to be the same, which suggests maybe other jurors were also having trouble. The problem here is the context of these deliberations. It was so late. It had been such a long day and they had had little food and they didn't know when they were getting out of there. And they had to then still take a bus back to 26th and California to retrieve their mode of transportation to go home. Under these circumstances, it would have been very simple for the court to continue the case to the next morning, give everybody a fresh set of legs, a fresh perspective to come back without the feeling of coercion. Thank you. So is your concern, as you expressed it today, really over the one juror, Ms. Navarone, I think you said her name is, or the entire jury who had been deliberating or had been impaneled or at least sitting in a courtroom somewhere since 9 a.m.? Is it your position that the entire veneer, the entire jury had been coerced or just the one? Well, I think that based on juror Navidad's statements, we know that she was certainly feeling coercion. But I think the circumstances under which these deliberations were held after this long day and the late timing, the lack of food, all of that could have led any of the other jurors to feel that they would be better off coming to a verdict quickly and not feeling the pressure to want to go home. So the entire jury? Yes. Thank you. All right. No other questions. Ms. Stott, you may proceed when you're ready. May it please the court and counsel. I think defendants just argued that the court erred in not excusing the jury for the night. I think that is a new argument that was, to me, it doesn't appear to have been briefed or raised below. The reply brief actually says Jorge is not arguing that the court erred in allowing the jury to deliberate past 10 p.m. There was no objection at the time that the court should have excused the jurors for the night. And so I would say this is forfeited and ask the court not to consider the timing of the deliberations, even if it had been preserved. Timing is only a factor if the jury indicates that fatigue is affecting their ability to deliberate, and we don't have that here. As for the sufficiency argument, this is a request for this court to reweigh the evidence, and it can't do that. It can't redetermine witness credibility. A single eyewitness is sufficient and that there is no extra requirement that the appellate court determine, you know, was the eyewitness credible. The appellate court applies the light most favorable standard, which presumes that the eyewitness is credible. That's what it means to take the evidence in the light most favorable to the state. But I would add Christie's testimony was very clear about defendants' violence, manhandling her, pushing her, shoving her, tearing the keys through her placing the elbow. She said he gripped her neck with his elbow, which would involve placing the elbow. It was just more specific, a better description of his actions. We didn't need corroboration, but we had it. We had the photo of the hole in the shirt, and we had defendants' own testimony that he used more force than was required to get his keys back. That means there's no defensive property here. He can only use reasonable force. And of course, he can't use that defense to take back property once someone else already has it. And for all the other reasons in the brief, the evidence was sufficient and defensive property didn't apply. As for this idea of coercion, I don't see any evidence of coercion in this record. It's true juror Navidad indicated she didn't like this situation. She didn't want to deliberate. But that's just what's inherent in jury deliberations all the time. There was no indication other jurors were pressuring her and we know that because what the court found was that she wrote two illegible words on the last line of the guilty verdict form. And although she told the court those words were not her signature, she said she did not tell the other jurors. So they would have had no way to know that she wasn't signing the verdict. She appeared to be signing the verdict. And her comments to the court actually don't indicate she didn't think the defendant was guilty. They indicate she thought he was. She just didn't want to participate. She said her conscience wouldn't allow her to send a defendant to jail. Well, the only way he's going to jail- Just a second. Just a second. She was questioned in chambers. And what you said is the opposite of what I remember her saying in chambers. She said the evidence is not there. She said something about the lack of what she heard. She also said something to the effect of her conscience wouldn't allow her to send someone to jail, which to me suggests that she thought he was guilty and didn't want to take responsibility. And also that she's not following the instructions, which tell her to not consider the punishment consequences. You know, so there's nothing- We don't have a deadlock situation here. There's no indication the jury can't reach a verdict. You know, they've only been deliberating for a half hour. We just have juror Navidad just not following the instructions and writing what appears to be a signature and then saying that it wasn't a signature. So the way the court responded to I would add, defendant didn't ever object on the ground that the court's responses were coercive. That would have given the court a chance to adjust its instructions. But all he did was ask for a deadlock instruction, and this jury wasn't deadlocked. So the instructions along the lines of, you know, continue to deliberate, follow your instructions, reach a verdict, those are proper. There's no requirement that the court specifically reference the possibility of a for all eternity. And I would add that those notes, those notes were given before the jurors had a chance to re-deliberate after the poll. Just one other point. I know there was an argument in the briefs suggesting that it was defendant's questions to the jury that somehow got out that juror Smith was biased. And I would just note that that actually came out in response to the court's questioning on page 112. And again, the court can't ignore defendant's own testimony that he used more force than he needed. And so that means this was a battery and it was not justified. I'll rely on the brief for the remaining arguments. And unless the court has questions, I'd ask the court to affirm the judgment. Thank you. Have any questions? Was there, Ms. Stotz, was there any occasion during voir dire that defense counsel was limited in the time that he had to question? I mean, we understand that the court controls voir dire and can, you know, has an interest in moving the case along. But can you address whether defense counsel was at all impeded or what would you respond about the restriction or the limitation placed on him? First, you can ask two questions and now you're down to one and now you can't ask any more. Well, I would say, you know, he had no right to ask any questions and the judge asked a She did give him some leeway and initially allowed three questions. Eventually, he was kind of abusing the privilege. He was leading the witness into the jurors into answers to suggest they were biased. And so then the court restricted one of the questions. She ended up restricting the second one. He was never restricted on the third one, but he did ask a lot of questions. He asked 42 in all. Had he followed the instructions, that was more than enough to pose all three questions to the group as a whole and then do any necessary follow-up. If he thought his questions were needed even after he was restricted, he could have asked the court to ask them and he didn't do that either. So this, you know, given the court's own questioning, which was sufficient to ferret out any bias and the leeway defendant was granted, even though he had no right at all to question the jurors, it certainly wasn't an abuse of discretion the way the court handled this. Counsel, when we look at these cases and we try to determine whether or not there's coercion, we're instructed to look at it objectively and from the juror's viewpoint. Now, we have a situation where the jurors started early in the morning at 26 in California, were transported all to, where is this, 13th and Michigan at the time? Where was this at the time? Had they moved at the when this trial, well, whatever to the courthouse for domestic violence. And meals were not on time, I guess, but people normally have meals. They were tired, hungry. The lawyers were wearing masks in the courtroom. I assume the jurors were wearing masks too. And the judge says, you can't go home because Mrs. Navidad doesn't think it's a unanimous verdict. Now, given those circumstances, isn't it reasonable to, objectively, there's pressure on her to relent, to let everybody go home, the judge and everybody else. Wouldn't you agree? I don't agree, your honor. The circumstances you point out are the types of things that are always present in a jury. Oh, they're wearing masks all the time and there's COVID all the time and there's a jurors are not given lunch on time. They're not given a meal from morning to 6.45. Is that normal? I think it's often a long day. People are often tired. Is that normal? I think, I mean, I suppose COVID is normal now and long days for juries are typical. There were no complaints from the jury, no complaints from the defendant at the time about the timing. You know, jury, it's a long day. And as for the poll, I don't think defendant can object. He asked the court to poll. And what happens after that is generally that the jury's told to continue deliberating if there's a dissent. So it's not the best circumstances, but it's not coercion. There's nothing to suggest given the totality of the circumstances. Let me ask you another question right there. Now, when a jury dissents, is it normal for the chambers and questioned by the judge? It can be. I don't know that it had to be, but again, there was no objection to the questioning of the juror. And so that would be forfeited as well. But aren't we still looking at the objective about whether or not the juror is coerced? When that juror says, I disagree with it. And then the judge says, come on into the back with me. Let's talk about this. Isn't that kind of identifying him and what's the problem? I don't know that there's anything wrong about a court questioning a juror after this. And again, I can't really respond that that wasn't brought up below. It wasn't briefed. There was no argument that the questioning itself was coercive. It was all about the instructions. And then when the judge finishes her examination of this juror and makes an announcement to the entire juror, we have to go back and continue to deliberate because Ms. Navidad says it's not unanimous. Isn't that coercive? It's 10 o'clock at night and COVID, no food, tired from being on duty for 13 hours at least. No, that wasn't telling the jury anything they didn't already know. They knew juror Navidad had dissented. They knew she hadn't followed the instructions about a unanimous verdict. The jurors had already been told the verdict had to be unanimous. So this was just kind of a standard continue to deliberate, you're not done yet type of instruction. Again, there was no objection. And then the judge said, go back and you deliberate until you have a unanimous verdict. With no other instruction about what happens if there is no unanimous verdict. Doesn't that create a situation where those jurors say, we could be here forever? No, that's not a reasonable interpretation. There's no indication the jury thought they would deliberate forever. There's no requirement. Is there any indication they were told anything otherwise? There's no requirement that the instruction specifically referenced. Is there any indication in the record that they weren't given any indication that they would not have to deliberate forever? They were told they would have to deliberate until a verdict was unanimous. Is that correct? I don't think it was phrased quite that way. It did say, please deliberate until you reach a unanimous verdict. The defendant did not object to that wording. So he didn't give the court a chance to reword it in a different way that would have met his requirements of what he thought was non-coercive. Jurors always have to reach a verdict. It always has to be unanimous. These are fairly standard instructions. I don't have anything else. So I guess the position is that all of this, regardless of how we see it objectively, because defense counsel failed to object at any point in the evening to the instructions, the questions, to the no food, to continue to deliberate, it's 10 o'clock at night. Because defense counsel failed to object, the entirety of this issue is forfeited and we cannot reach it. That's right. He didn't object that it was coercive. All he did was ask for a deadlock instruction, which didn't apply. Counsel, am I right that the verdict of guilty came back about half an hour after they were sent to re-deliberate? Correct. We could take that amount of time into account, couldn't we? I mean, she had only 30 minutes earlier. We often have to guess what the jury's doing and we don't like to do that. But here we don't really have to guess what Ms. Navidad was thinking. She stated in her verdict and that she thought based on the lack of what she heard, that her conscience wouldn't allow her to convict. 30 minutes later, she votes to convict. That's a pretty quick turnaround, don't you think? It's 30 minutes. I don't think we can read anything into that. And again, this might be more of a concern if there was some kind of deadlock here, but there was no And again, there's no sense that the jurors are pressuring her because she didn't tell them. She disagreed. She signed something that looks like her signature and then she doesn't say anything until the judge asks and she says it's not. What do we know what she told the other jurors? We only know the signature. We don't know what she told the other jurors. The judge asked her if she told the jurors that she didn't sign it and she said no. So the judge found, as a matter of fact, that she wrote two illegible words at the bottom of the verdict form. I'd encourage the court to look at them. It looks like it could be a sloppy signature. And the court also found on questioning that she did not tell the other jurors that she wasn't signing. So she did something that looks like a signature. So there's no reason to think the other jurors were pressuring her. She looks for all intents and purposes like she's going along with this verdict. Were the jurors aware that she was taken into chambers for a discussion? I don't know. Who were the other jurors at the time that she was invited into the judges chambers? I don't know that we can tell for sure from the record. I think the jurors were deliberating in the courtroom because of COVID concerns. They may have been in the courtroom, but I'm not sure we can tell. So they may actually have been aware that Ms. Navidad was invited into judges chambers. I'm not sure we can tell that from the record. I'm sorry. Ms. Dodds, can I follow up on something you said? You said that the jury was not deadlocked. So by that, do you mean the jury did not come back and inform the judge that they were hopelessly deadlocked? Is that what you mean by that? Or what's the definition of deadlock? The jury did not suggest that they were deadlocked in the sense that they couldn't reach a verdict. They didn't tell the judge that. But also, there's nothing in the circumstances to suggest that was the case. Generally, a deadlock, it would take much longer than a half an hour. But wasn't that the judge's initial impression that they can't deliberate anymore because apparently they were deadlocked? That was her impression from talking to Ms. Navidad because that was the first words out of her mouth before she made her phone call. She did say, I think, something along the lines that they can't continue to deliberate. But of course, she changed her mind. And she was wrong. The jury wasn't a deadlock under these circumstances. You need an expression from the jury or maybe a really long length of time without a verdict. And the jury saying something like, we can't get anywhere or we're deadlocked at this to this. And there was nothing like that. And we know from what juror Navidad did, she wrote something that looked like a signature and she didn't tell the other jurors she wasn't signing it. So there was no indication she was like a holdout and they were pressuring her. Well, not to beat a dead horse on this question of deadlock, but there wasn't time for there to be long deliberation because it was so late at night. Like had this gone into the next day and had several hours passed, we might have a different question. But that's part of the defendant's point, isn't it? That she could have easily been led to believe that until she relented, that they were going to stay there all night until they got a verdict. I mean, it was late enough at night that one, look, you're right. The judges don't have to tell the jurors how late they're going to deliberate. I think we know that most judges do that. Most judges like the jurors to know, to plan their day. Some of these people have families, they have kids and spouses waiting for them. They need to have some idea. We're going to deliberate until 530 today. I'm going to let you off early today. I'm not saying you have to, but it was very late at night after a very long day. And she gave them no indication how much longer they were going to stay there. If we're looking at the totality of the circumstances, there's no particular reason why a juror wouldn't believe that they're staying there until they get a verdict. You disagree with that? I disagree with the idea that it's always helpful to tell the jury how long they're going to deliberate. There have been cases where courts have found that that is coercive, where the court says, OK, I'm going to, you're going to recess for the night in a few minutes and you're going to come back later. And then the jury returns a verdict. And then the defendant argues that that's coercive. There's really not a good way for a judge to win here if the defendant can sit back and just not object and hope for a not guilty. And then when it's a guilty, he says, oh, everything you did was wrong. And this is kind of what we have here. The defendant could have said it's too late. Let's come back tomorrow. He could have said, you know, the jury hasn't eaten. He could have said the wording of your responses to the notes is coercive, but he wanted to see what would happen. And now he's arguing that everything was wrong. If you had been the judge after you spoke with the juror in chambers, would you have sent them back to re-deliberate that night? You know, I think there's nothing wrong with continuing the deliberations at this hour. There are a lot of cases holding that much later deliberations are perfectly fine. And it's really the question is, has the jury expressed that they're too tired to continue deliberating? We don't have anything like that. So it was perfectly fine for the judge to do it this way. And again, no objection to the timing by the defendant. I know we can't really get into the minds of what the jurors were thinking, but I'm just struck or stuck. What must the jury, the remainder of the jury have been thinking when Ms. Navidad is missing from their presence for a period of time? And it's conceivable that they're all in the courtroom and they see she's missing and she's not left the court building. I'm certain they could see that. She's obviously in with the judge, yet you maintain there's no way the jury would have known that she might've been the holdout or the person who. Oh, no. If I said that I misspoke. The jury definitely knew she dissented from the verdict. The poll took place in open court. The question was, was this and is this now your verdict? Everyone said yes, except for her. So the jurors knew at that point that Navidad hadn't followed the instructions, which said unanimous verdict signed by all of you. They knew she had written something that looked like a signature, had not told them that it wasn't her signature. And then when she was in open court said, oh yeah, that's not my verdict. So they probably knew that the judge was questioning her about not following the instructions. But that would be the proper procedure when a juror is not following instructions, which is what she did here. Nothing wrong with asking her to continue to deliberate. I have nothing else, Justice Ellis. Okay. Anything else, Justice Ellis? Thank you. Okay. All right. Ms. Curry, you can take a few minutes for rebuttal. Sure. I want to touch on the issue of forfeiture. And I really think it's disingenuous for the state to argue that this issue is forfeited. From the time that Navidad expressed her dissent from the verdict, defense counsel repeatedly asked for different instructions, which is an implicit objection to the instruction that the court is giving. The court went on a page long rant about the lateness of the day, the lack of food, that the jury, if they were to continue to be told to continue to deliberate, might think that they would be there until quote, infinity. The defense counsel made his displeasure with the judge's reactions to Navidad's dissent, to the jury notes, very clear throughout the record. And this issue has not been forfeited whatsoever. And it was litigated very specifically in the post-trial motion as well, all of these issues, the lateness of the day. And in addition, on appeal, implicit in the argument that the case should have been continued to the next morning. So none of these issues have been forfeited. These were all litigated below and they were preserved in the briefs. I think I'm just going to leave it at that. This jury was tired. It was late. I think that the notes also implied, yes, we don't know what the jurors were feeling, but what if I'm unable to that at least one juror, if not multiple jurors were done, they were tired, they were feeling under pressure, they should have been allowed to go home. And because that is the jury that reached this verdict in this case, Mr. Arroyo was not given a fair trial. Thank you. Any questions based on what was just said? If not, the case was well argued, well briefed. We will take the case under advisement and an opinion or order will be entered in due course. Thank you very much and have a great day. Thank you both.